EDWARD J. MAHONEY *vs.* JOSEPH BEATMAN.

First Judicial District, Hartford, May Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, JS.

Argued May 15th—decided November 7th, 1929.

*Walfrid G. Lundborg,* for the appellant (plaintiff).

*Abraham S. Borden* and *Aaron Nassau,* for the appellee (defendant).

WHEELER, C. J. The trial court found that the collision between the automobiles of plaintiff and defendant was the result of defendant's negligence. The correctness of this conclusion is not, and cannot be, challenged. Probability of injury by one to the legally protected interests of another is the basis for the law's creation of a duty to avoid such injury. This duty is determined by what the reasonable man would or should do or would or should omit to do in like circumstances, and when its violation culminates in damage as a consequence of the violation an action will lie for the resulting damage. The defendant owed to the plaintiff and all travelers upon the highway the duty of exercising reasonable care in operating his car so that there might result from such operation no probability of harm to them. He breached that duty and the collision with the defendant's car resulted, as a consequence, while traveling upon the highway.

The appeal does not question the existence of the negligence but the extent of the responsibility resulting in consequence of the negligence. The test of negligence—the measure of duty—and that for measuring or ascertaining liability resulting from the negligence are wholly apart. Bohlen, Studies in the Law of Torts, p. 5; Smith, 25 Harvard Law Review, 242. The measure of liability is found by determining the consequences of defendant's breach of duty. We have said, and courts as a general rule have said, that damages are recoverable so far as they may be proximately caused by the negligent breach. Few subjects in the law in the past thirty years have been written upon more extensively by the greatest thinkers in the field of torts than that of "proximate cause." These writers differ widely in their reasoning and conclusions but are in agreement in their conclusion that judicial

reasoning and discussion of this subject has left our law in a most uncertain and unsound condition. They have, we think, made their demonstration so complete that it is all the more regrettable that they so widely differ in their theories and methods of reasoning. It is due to their lack of reasonable agreement and to the treatment of the subject by most of the writers in a way altogether too difficult of understanding and too abstract for presentation to a jury that the courts have as a rule failed to give the consideration to the written discussion of these eminent authorities in the field of torts which their wealth of material so richly deserved. The desirability from a practical standpoint of a workable rule for determining the legal consequences resulting from a negligent act, at once understandable and sufficiently accurate in its applicability to enable a trial court to so present it to a jury that they may grasp it, has been growingly important as the changes in economic conditions have multiplied so vastly the instances of the problems in what the courts have denominated "proximate causation." Our court defined this term in *Smith* v. *Connecticut Ry. & Ltg. Co.*, 80 Conn. 268, 270, 67 Atl. 888, as well as we have as yet seen it defined. In its constant use our trial judges have frequently had reason to feel that without explanation it did not furnish a rule whose application could be made with certitude by court or jury. We have had the same apprehension, but as yet in an opinion have never made the attempt to compare theories of the legal writers with those of the courts to see if we might find the workable rule which the necessities of the present day demand.

The facts of this case have required us to restudy this subject with the end in view of the decision of this case and the adoption of a statement of the rule involved which shall be clear enough for use by the

trial judge and simple enough in its application for the jury, and more than these, be a guide and aid to right decision. In the consideration of the subject we have had before us the writings of Jeremiah Smith, Professors Bohlen, Beale, McLaughlin, Green, Levitt and others, the textbooks including Beven and Street, together with many of the most valued of the opinions of the courts. These we have weighed, as best we could, within the limits of time we could give them.

The determination of the injury and its extent resulting from an act of negligence is the finding as a fact of the causal relation between the act and the injury. It is the ascertainment of the legal cause between these. Professor Green, in his Rationale of Proximate Cause, page 132, has especially emphasized the finding of the causal relation as one of fact and most of these other writers seem to be in agreement with this idea. This causal relation is called the proximate cause. Various interpretations and explanations of this term are found in decided cases. One test is made to depend on contiguity of space or nearness of time. Neither by itself is a test of the causal relation but merely an evidential element. Smith, 25 Harvard Law Review, at page 108.

The rule that a wrongdoer is liable for all probable consequences, or for all natural and probable consequences, has been accepted more generally than any other as determinative that the act is the proximate cause. This rule involves, as Smith points out, the reverse proposition that the defendant would be relieved from liability if the consequence of the tort was an improbable one, that is, was not reasonably foreseeable, or one which could not reasonably have been anticipated. Smith, in his articles in 25 Harvard Law Review, has demonstrated the unstable character of this rule. Literally followed it would bar recovery

by the injured innocent for wrongs done through the negligence of another because at that time they could not have been anticipated. An example which he gives on page 239, fortifies his text: "If I negligently frighten my neighbor's horse and he suddenly whirls around thereby upsetting the carriage and throwing my neighbor out, can I escape liability because the chances were that the horse, instead of whirling about, would have dashed the carriage against a wall? And if my neighbor, having an unusually thin skull, though his appearance does not so indicate, is thrown upon his head and suffers great damage, can I claim to have my liability limited to the damage which would have been suffered by a man with a normal skull?" Street, in his Foundations of Legal Liability (1906) p. 457, grants the authority of this rule as a test of the responsibility of negligence but not as to the extent of the responsibility for its consequences.

The rule is sound so far as probable consequences are involved; it is not, as applied to improbable consequences, a just rule because it denies recovery for consequences which could not be foreseen. Instances of torts involving improbable or unforeseen consequences are frequent and in practice our own courts do not deny recovery for them as a legal cause of the consequence of the tort.

Another test relied upon in the decisions is that of remoteness—where the consequences in causal relation to the tort are remote recovery will be denied. By what standard shall the court instruct the jury remoteness is to be determined? None has yet been found and no definition ever been formulated which will serve as a test. Under the test of remoteness the question must be submitted to the jury without guidance or standard to decide as a question of fact. Unless the courts shall establish a standard for remoteness

each jury will establish its own standard and the cases will be infrequent where their decision can be set aside even upon the ground that the reasoning mind could not reasonably reach that conclusion. Sedgwick on Damages (9th Ed.) Vol. 1, § 111b, summarizes the doctrine of "proximate cause" to mean in law "no more than a cause which is not so remote in efficiency as to be dismissed from consideration by the court. This of itself explains why it has never been possible to ascertain any general test of proximate cause even for a given class of cases; since in law whatever is not proximate is remote, and *vice versa,* it is equally true that no general test of remoteness exists." "A remote cause," he says, "is simply one which because of its having ceased to be actively efficient, or never having become actively efficient, in the result, is neglected by the court."

It will thus be incumbent upon the court, if this definition is accepted, in every case liable to present the question of remoteness, to so define a remote cause, and then to explain its definition in terms understandable to the jury. At best it will be an explanation of a negative proposition which the jury must elucidate and apply to the facts as found by them. "The legal distinction between what is proximate and what is remote is not a logical one" and, as Sedgwick says, purely a practicable and arbitrary one. Smith says, in his article in 25 Harvard Law Review, at page 305: "If the methods of decision now prevailing as to other topics are followed here, then no definition of legal cause, no test of 'remoteness,' can be given which will not result in submitting most close questions of causation to a jury."

Consequences, it is sometimes held, which follow the act of negligence are not the proximate result of the act when produced through the operation of an inter-

vening agency. That depends upon whether the original wrong persists down to the moment of the damage or to the moment of the force which produced the damage. Bohlen says that the independent intervening agent which breaks the causal connection between the wrong and the injury "must be an independent, intervening, unusual force diverting the natural results of the wrong to some new and different end; it may use a condition caused by the wrong, but it utilizes it to bring about some new consequence of its own." Bohlen, Studies in the Law of Torts, 30. "Of course," Bohlen says at page 261, "if a cause unconnected with the wrong intervene and divert those consequences to some new and different end, then the injury is no longer the result of defendant's wrong, but of the new cause." Smith, in 25 Harvard Law Review, 251, writes: "If the so-called 'consequential damage' is distinctly traceable to the tort as the effective cause, the defendant is none the less liable because of an interval of time or space, or because the effect is produced through the operation of intervening agencies." In *Engelhart* v. *Farrant,* L. R. (1897) 1 Q. B. 240, the driver of a horse and cart negligently left it in charge of a lad who wrongfully drove off and negligently ran into plaintiff's carriage. Defendant claimed if the lad were negligent the intervention of his act by which the injury was brought about was not a consequence making the master liable. The court on appeal held that the consequence did not cease to flow by the lad's intervention which was a probable sequence of the defendant's original negligence. Green, in his Rationale of Proximate Cause, at page 142, expresses the opinion that intervening agencies while important in determining legal liability have little pertinency in a discussion of the causal relation of the injuries resulting from the wrongful act to that act. This we believe to be a true

exposition of the effect of an intervening agency. If the force which the negligent act puts in motion has spent itself and neither set in motion another force resulting in further injury nor created a condition which was the cause of further injury, or an agency has intervened which has so diverted the original force that it no longer bears a causal relation to the subsequent injuries, the responsibility of him who caused the original wrong ceases. Beven on Negligence (4th Ed.) 91; *Smith* v. *London & S. W. Ry. Co.*, L. R. 5 C. P. 98. It is not the mere presence of the intervening agency which effectuates this result but the fact that the original wrongful act has ceased to bear a causal relation to the subsequent injuries. An intervening agency may be concurrent or successive or intervening with the wrongful negligent act or omission. Unless the share of responsibility of each is capable of distinct separation making each liable for what he has caused, each will be liable for the whole. Beven on Negligence (4th Ed.) 79; *Byrne* v. *Wilson,* 15 Ir. C. L. R. 332; *Hygenic Ice Co.* v. *Connecticut Co.,* 90 Conn. 21, 23, 96 Atl. 152.

These rules to which we have referred are the principal bases upon which the courts rest the doctrine or principle of proximate cause. They do not bear analysis, nor do they satisfy the practical necessities of a rule which must probably be more frequently applied by triers of cases than most of the rules in the law of torts. Jeremiah Smith searched for a rule by which the thing designated as proximate cause could be determined. We have brought the standard he adopted in comparison with the statement of the rule or standard of other writers and jurists and find it serves the needs of the triers of causes better than any other that we are acquainted with because it can be understood and applied by the average man. He said (25 Harvard

Law Review, pp. 309, 310) the problem was—"What constitutes such a relation of cause and effect (such a causal relation) between defendant's tort and plaintiff's damage as is sufficient to maintain an action of tort?" His answer to the problem was the application to the facts of the general rule—"Defendant's tort must have been a substantial factor producing the damage complained of." Or stated in another form— "To constitute such causal relation between defendant's tort and plaintiff's damage as will suffice to maintain an action of tort, the defendant's tort must have been a substantial factor in producing the damage complained of."

Causes traced clear to the end which become of trivial consequence, mere incidents of the operating cause, may be, in a sense, factors, but are so insignificant that the law cannot fasten responsibility upon one who may have set them in motion. They are not substantial factors as operative causes. To be factors of this degree they must have continued down to the moment of the damage, "or, at least, down to the setting in motion of the final active injurious force which immediately produced (or preceded) the damage." Smith, 25 Harvard Law Review, p. 311, *Explanation* 2.

Green, in his Rationale of Proximate Cause, page 137, accepts the Smith standard as "a practical solvent" for this troublesome term. "The criticism," he says, "usually leveled at the test proposed by Judge Smith is that it does not go far enough. That it is too general. That it does not aid the jury. . . . The answer is that the formula cannot be reduced to any lower terms. . . . It presents a question of fact. . . . The answer to any such issue when proposed to a jury must be found by the jury after a consideration of all the facts that bear upon it." And then he presses with, we think, unanswerable force the suggestion that

although the "substantial factor" test is not entirely exact it can be no more difficult for a jury to apply than the test of "reasonable care."

Before the trier is called upon to even pass upon the question of liability the court must determine whether the jury would be justified in finding that there is a negligent act and that there is a causal connection between that act and an injury. When the issue of liability is submitted to the jury or trier then the issue of the extent of the injury arises. No part of that can arise unless there be a causal connection in whole or in part between the act of negligence and the injury. It is for the court to determine whether or not the facts in evidence support any reasonable inference of a causal relation between the act of negligence and the injury in whole or in part. If not, the court, as matter of law, should in its instruction exclude from the consideration of the jury any such claimed injury. And the court must reach its conclusion by itself answering the question, Does the evidence reasonably justify the submission to the jury of the question, "Was defendant's conduct a substantial factor in producing plaintiff's injuries?" "It requires him [the judge] to say," as Green puts it at page 200, Rationale of Proximate Cause, "whether the risk encountered is one which the rule was designed to protect against." Or, as Smith puts it at page 306, 25 Harvard Law Review: "Before the question of causation can be submitted to the jury, there is a preliminary question to be decided by the judge; namely whether upon the evidence twelve honest men can reasonably find the existence of the causal relation. It is for the judge to say whether the jury *can* reasonably so find; and then, if he decides in the affirmative, it will be for the jury to say whether they *do* so find. The judge has to say whether on the evidence causal relation *may be* rea-

sonably inferred; the jurors have to say whether from
the evidence, if submitted to them, the causal relation
*is* inferred by them. The question of causation will
not get to the jury at all, unless the judge thinks that
twelve men can reasonably find that the defendant's
tort was, at the moment of the happening of the
damage, a (continuing efficient) cause of the damage
and not a mere antecedent fact. This power of the
judge, properly exercised, materially lessens the dan-
ger of an unjust result as to causation." See also
Bohlen, Studies in the Law of Torts, p. 5. Where this
issue is not so plain that reasonable men could not
reasonably find the causal relation and render damages
for the injury, or for a part of the injury, the court
must leave the question to the jury to find as a fact
whether defendant's conduct was a substantial factor
in producing the injury, or part of the injury.

It may be the same conclusion could be reached
under the "remote cause" rule if remote were inter-
preted to mean substantial as Sedgwick does when he
says: "The limit is set at a point where for the purpose
of the law, a particular cause may be said substantially
to have spent its force, and to have fallen into the great
mass of circumstance which has ceased to be an ac-
tive force." 1 Sedgwick on Damages (9th Ed.) § 111b.
This would be the substitution of a negative for an
affirmative finding; besides, the "substantial factor"
rule is more direct and far easier of understandable
presentation and application. Whether an injury
following a negligent act is caused by this act depends
upon whether it is traceable in causal relation to the
tortious act. Or, expressed in another form, was this
act a substantial factor in causing this later injury?
There may be several injuries resulting from the negli-
gent act which are not necessarily simultaneous but
the act to have such a continuing effect must be a

substantial factor in producing each injury. Whether they are concurrent, successive or intervening is of no consequence in determining the causal relation of the injury to the tortious act; all that is of consequence is, were they substantial factors in producing the injury. *Corey* v. *Havener*, 182 Mass. 250, 65 N. E. 69; Green, Rationale of Proximate Cause, p. 142. Where the torts are independent of each other but each may have produced the result each is a substantial factor of the damage. Smith, 25 Harvard Law Review, p. 327; Green, Rationale of Proximate Cause, pp. 168-170.

Let us make application of these principles to the facts, in the first place taking the facts precisely as found. The damage to the Rolls Royce which occurred when the car struck the tree and stonewall and rolled over is found to have been due to plaintiff's driver's inability to control or stop the car after the collision because of the speed at which he was proceeding and that this speed did materially hamper the driver in controlling the car. The court further finds that the speed of the plaintiff's car, though unreasonable, did not contribute to cause the collision, which was due entirely to the negligence of the defendant. The theory of the court in ascertaining the extent of the damages was that one driving a car at an unreasonable speed when negligently run into by another car cannot recover for any of the injury to his car, after the collision, which could have been avoided by controlling or stopping his car had it not been driven at an unreasonable speed. The car was being driven at the same rate of speed after as before the collision. No negligence on the part of the driver is found. There was no new cause intervening after the collision wholly independent of it which itself caused the further injury. The intervening cause must have diverted the force of the impact or else the force of the impact

must have become spent or exhausted so that the inter-vening cause became the substantial factor causing these injuries; this does not appear to have been true in this case. Even though these injuries were produced through an intervening agency if the force of the col-lision resulting from the defendant's negligence was still a substantial factor in the production of these in-juries, the intervening agency would be ineffective to relieve the defendant from liability for the injuries. It is not found specifically that the impact caused the car to veer to the west, but upon the facts as found, especially when read in the light of the trial court's memorandum, it is a necessary inference of fact, which we are required to draw, that this was the cause of the veering. The court's theory was that after the car had veered there would have been an opportunity for the driver to have regained control of the car, or to have stopped it before these injuries occurred. If the facts in evidence had justified the court in finding that after the collision the driver was negligent and his negli-gence was the cause of the subsequent injuries a dif-ferent proposition would have been presented. But the court did not so find. There is no substantial factor standing as a causal connection between the negligent act of the defendant and these injuries except the im-pact of the collision. The negligent act to which the plaintiff has not materially contributed, is responsible for all the injurious consequences and is a substantial factor in producing them. These consequences follow in true causal relation until the negligent act has become spent or exhausted, or some intervening agency has come into existence after the negligent act and diverted the results of the negligent act to "some new and different end."

In *Greenland* v. *Chaplin*, 5 Ex. 243, a steamboat, belonging to defendant, negligently ran against a

steamboat on board which the plaintiff was a passenger; in consequence an anchor fell over and broke the plaintiff's leg. Pollock, C. B., on appeal, reversed his decision in the lower court in directing a verdict, saying: "I entirely concur with the rest of the court, that a person who is guilty of negligence, and thereby produces injury to another, has no right to say, 'part of that mischief would not have arisen if you yourself had not been guilty of some negligence.' I think that where the negligence of the party injured did not in any degree contribute to the immediate cause of the accident, such negligence ought not to be set up as an answer to the action; and certainly I am not aware that, according to any decision which has ever occurred, the jury are to take the consequences and divide them in proportion according to the negligence of the one or the other party." See also *Rigby* v. *Hewitt*, 5 Ex. 240.

Taking the finding as it stands, it presents a question which has never heretofore been before us and is of very considerable importance in the law of torts. It is for that reason we have considered the principles involved in the case upon the facts as found by the court and hold that the judgment cannot be sustained. The appellant assigns as error the conclusions that the speed of the car did materially hamper the driver in controlling the car and he completely lost control of it owing to the speed he had been and was traveling. We cannot sustain this claim so long as paragraph eighteen of the finding stands, for that supports this conclusion. Had error been assigned as to the finding of the last three lines of this paragraph as to the cause of these injuries subsequent to the impact, we should have been obliged to have sustained the assignment. We find nothing in the excerpts from the evidence attached

which justify the finding, but we find that the evidence of the defendant's driver is contrary to this finding.

The judgment was for $200 nominal damages. Such a judgment is for substantial not nominal damages. *Brennan* v. *Berlin Iron Bridge Co.,* 72 Conn. 386, 389, 44 Atl. 727; *Michael* v. *Curtis,* 60 Conn. 363, 369, 22 Atl. 949. The damage done the plaintiff's car was $5,850 at the time of the collision on July 31st, 1926.

There is error, the judgment is set aside and the Superior Court directed to render judgment for the plaintiff for $5,850, with interest from July 31st, 1926.

In this opinion HAINES, HINMAN and BANKS, Js., concurred.

MALTBIE, J. (dissenting). In *Monroe* v. *Hartford Street Ry. Co.,* 76 Conn. 201, 207, 56 Atl. 498, this court by HAMERSLEY, J., defined "cause" as follows: "When an event is followed in natural sequence by a result it is adapted to produce, or aid in producing, that result is a consequence of the event, and the event is the cause of the result." This definition was quoted by us as late as the case of *Santini* v. *Levin, post,* 248, 252, 147 Atl. 680, with the added comment that it was "perhaps as readily understood an explanation of the sense in which we use proximate cause as any." The *Monroe* case was followed by *Smith* v. *Connecticut Ry. & Ltg. Co.,* 80 Conn. 268, 270, 67 Atl. 888, decided by a court made up of BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, JJ., and there, speaking by BALDWIN, C. J., it was said: "That only is a proximate cause of an event, juridically considered, which, in a natural sequence, unbroken by any new and intervening cause, produces that event, and without which that event would not have occurred. It must be an efficient act of causation separated from its effect by

no other act of causation." This definition has since been repeated exactly or with some modification of language in at least seven decisions, and in five of them it sufficed to solve typical problems in proximate causation. *Miner* v. *McNamara,* 81 Conn. 690, 72 Atl. 138; *Swayne* v. *Connecticut Co.,* 86 Conn. 439, 85 Atl. 634, 737; *Kelsey* v. *Rebuzzini,* 87 Conn. 556, 89 Atl. 170; *Howard* v. *Redden,* 93 Conn. 604, 107 Atl. 509; *Lombardi* v. *Wallad,* 98 Conn. 510, 120 Atl. 291. Precedent authority of such weight must be held in high regard and no departure from it should be made unless it very clearly appears that injustice has resulted or is likely to result if we continue to follow it.

The statement in the *Smith* case naturally divides itself into two parts. The first is an adaptation of the proposition in the *Monroe* case, that harm to be deemed a proximate result of wrong conduct must follow from it in a "natural sequence." This is not at all to say that to be compensable harm must have been reasonably foreseeable. The latter proposition puts the trier in the shoes of the wrongdoer and looks forward; a consideration of "natural sequence" is made *"ex post facto,"* the problem is looked at in the light of all the circumstances, known, knowable or unknowable in advance, as they have ultimately appeared, and the question is, was the harm so outside the range of human experience that it could be said to be not a natural result. Bohlen, 40 American Law Register (N. S.) 86. This limitation upon liability has the support of eminent legal students and of almost innumerable decisions. Bohlen, Studies in the Law of Torts, p. 261; 1 Sedgwick on Damages (9th Ed.) § 111e; 1 Street, Foundations of Legal Liability, p. 111; 1 Sutherland on Damages (4th Ed.) § 34; 1 Shearman & Redfield on Negligence (6th Ed.) §§ 26, 28; 6 Words & Phrases (1st Series) p. 5760; 3 Words & Phrases (2d

Series) p. 1328. It may no doubt be logically argued, as Salmond, Smith and Green do, that a wrongdoer, though not guilty of intentional wrong, should be held liable for all the harmful results caused by his wrongdoing, yet after all, as has been repeatedly said, the question is a practical question, not one of bare logic and, as Smith also says, in the last analysis whether any limitation is to be placed upon the liability of a wrongdoer is a question of "social policy." I think the limitation of liability for wrongdoing to those results which follow in a natural sequence accords with an innate sense of justice in the ordinary man. There is, moreover, an entire absence of any showing of injustice having resulted from the adoption of this limitation by this court some twenty-five years ago and its retention since that time. In so far as the majority opinion rejects the test of the foreseeability of the resulting harm I am in entire accord with it. That it meant to go no farther and to leave untouched the limitation of liability to those results which follow upon wrongdoing in a natural sequence I am quite ready to believe.

The other portion of the definition in the *Smith* case has to do with that element in proximate causation generally referred to as an intervening cause. The proposition is stated in that case in two ways: The chain of causation must be "unbroken by any new and intervening cause"; the wrongdoing "must be an efficient act of causation separated from its effect by no other act of causation." I think it is very likely true, as the majority opinion suggests, that these statements are not easily to be understood and likely to be misleading, and that they do not afford a very practical test for solving problems of proximate causation, particularly when it becomes necessary that they be applied by a jury composed of laymen. With the effort of the majority opinion to find a test which will

be more easily understood and applied I am in sympathy. Moreover, if the test which it lays down be properly understood it probably comes as near as it is possible to get to a sound statement of a broad general principle. That test, as I understand it, is, was the wrongdoing a substantial factor in producing the harm which followed. This is an adoption of Professor Smith's formula stated in his article, 25 Harvard Law Review, 310. In a footnote Professor Smith suggests that in the formula "efficient" or "continuously efficient" might be substituted for the word "substantial." The suggested words are not at all synonymous with the word "substantial" chiefly because they import the additional and very important element of activity. It is just here that I am afraid the suggested test in the majority opinion will be misunderstood, particularly if it is used in a charge to the jury. It is only when the element of continuing activity is imported into the phrase "substantial factor in producing" from the last word used in it, that its true intent appears. It is only when the phrase is read as meaning that the wrongdoing must be an efficient factor to a material extent in producing the harm which followed, that it seems to me to carry the intended significance.

One other thing I think should be said upon this phase of the question: At best such a test as that proposed can be but the statement of a broad general principle. One has but to study the various categories of situations involving the problem of intervening cause set out by Salmond in his work on Torts (6th Ed.) pages 145 *et seq.*, or by Beale, 33 Harvard Law Review, 636, to appreciate that no one formula will adequately meet the needs of all of them. Every writer upon this subject starts out with the axiomatic proposition that a wrongdoer is not to be charged with all the harmful results which may be considered from the

standpoint of logic or philosophy as caused by his wrongdoing and the effort is to arrive at some test, some principle, some formula, which can be applied to distinguish between those for which he is to respond and those for which he is not. The trouble is, that the circumstances which morally or practically are material in determining where the line should be drawn are not common to the various problems presented; thus the circumstances which intervene may be natural phenomena, or the involuntary and unlawful act of a third person, or his negligent conduct, or his voluntary but lawful act, or his voluntary and wilfully wrong act; or some act of the injured party himself may intervene and it may be a negligent act on his part or a wilfully wrong act. Take for instance these two situations: A plaintiff suffers a serious cut by reason of the negligence of the defendant and calls a competent physician who dresses the wound and instructs him to dress it himself until he calls again. The plaintiff in dressing the wound on the following day negligently uses foul dressing by reason of which infection sets in and the injury is made much more serious; for the additional harm to him it would hardly be contended that the defendant was liable. But suppose the plaintiff properly dresses the wound on the intervening days but when the physician comes again he is himself guilty of negligence in using foul dressing whereby infection results; in this case it would hardly be contended that the defendant was absolved from liability for the additional harm. Here there is no distinction in the character of the acts making up the chain of causation; the difference lies wholly in the person guilty of the negligence. Could the question of the liability of the defendant in both these cases fairly be left to a jury simply upon the statement that they were to determine whether the defendant's wrong-

doing was a substantial factor in producing this additional harm? Obviously not. This points my suggestion that as each case arises something more than a broad general principle will usually be found necessary to arrive at a correct solution, particularly as the problems are involved in instructions to juries. See *Lombardi* v. *Wallad*, 98 Conn. 510, 517, 120 Atl. 291. Indeed, Professor Smith does not rely upon the broad general statement which is adopted in the majority opinion, but he adds explanations and illustrations which serve to direct its application in the particular circumstances that may be involved. 25 Harvard Law Review, 311. It is well to have a general rule, but it is necessary also to recognize that its application must be adjusted to the particular facts of each specific case. In a charge to a jury a statement of the general rule may perhaps help, but in any event there should be a specific charge upon the particular circumstances of the case involved.

With reference to the particular case before us, I am not able to see how the discussion in the majority opinion is involved at all. The decision of the lower court did not go upon the theory that there was any *actus interveniens* but upon the theory that there was negligent conduct on the part of the plaintiff's driver which while it did not proximately contribute to produce the accident still did result in greatly increasing the damage from it. The principle upon which the case was decided is illustrated by our own decision of *Smithwick* v. *Hall & Upson Co.*, 59 Conn. 261, 271, 21 Atl. 924. The plaintiff, a workman, had been warned not to stand in a certain place on a platform next a building under construction, at a point where there was no railing; he did take his stand there and was seriously injured by the falling of the wall of the building due to the negligence of the defendant. It was held that his

taking his stand where he did was not contributory negligence because not the proximate cause of his suffering the injury complained of, and then the court goes on to say: "And if the claim means that the plaintiff by his act increased the injury merely, then if this were true it would not be such contributory negligence as would defeat the action. To have that effect it must be an act or omission which contributes to the happening or event which caused the injury. An act or omission which merely increases or adds to the extent of the loss or injury will not have that effect, though of course it may affect the amount of damages recovered in a given case." See also *Wright* v. *Illinois & Miss. Tel. Co.,* 20 Iowa, 195, 214; *Gould* v. *McKenna,* 86 Pa. St. 297; *O'Keefe* v. *Kansas City Western Ry. Co.,* 87 Kan. 322, 124 Pac. 416; *King* v. *Henkie,* 80 Ala. 505; 1 Shearman & Redfield on Negligence (6th Ed.) § 95. It seems to me that these cases establish a just and sound rule. Let the defendant answer for all harm resulting from his wrongdoing, but is it just to make him answer for the harm which results by reason of the plaintiff's own wrongdoing? After all, from the standpoint of justice is not such a situation upon a strict parity with one where the results of an injury done by the wrongful act of a defendant have been increased by the improper refusal or neglect of the plaintiff to obtain medical assistance or take due care for his own recovery? *Flint* v. *Connecticut Hassam Paving Co.,* 92 Conn. 576, 577, 103 Atl. 804.

It is true, as the majority opinion points out, that the finding of the trial court is only that the plaintiff's car before the injury was proceeding at an unreasonable speed. Upon a strict construction of the finding it might be said that this statement falls short of charging the driver of the plaintiff's car with negligent conduct and so the conclusion of the trial court fails of

support even as regards the principle it adopted. This situation, however, would call, not for a remanding of the case with direction to enter judgment for the plaintiff for all the injuries following upon the accident, but for remanding it to be proceeded with according to law.