[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
ARTICULATION
Pursuant to the June 17, 1992, order of the Appellate Court, the following response is made to Defendant-Appellant James Ambadjes' March 10, 1992, Motion To Articulate.
12. State whether or not the court considered that the joint custody agreement of April 22, 1986 ended the alleged wrongdoing of all the parties.
The court considered this question and concluded that the agreement did not end the wrongdoing of all or any of the parties. As described in the court's January 16, 1992 Memorandum Of Decision, Sheldon did not comply with the agreement and never returned the children to the United States as the agreement obliged him to do. The agreement plainly did not end the wrongdoing of Sylvia and Evelyn Marshak, for — as described in the decision — they continued to assist Sheldon in a variety of ways after the agreement was signed.
As to Ambadjes, the court concludes that the agreement did not end his wrongdoing either. Obviously, if Sheldon had honored the agreement, that would have been the end of the matter, but this was not the case. Even if Sheldon's breach of the agreement is viewed as a separate tortious act, Ambadjes' previous tortious acts, described in the court's decision, were substantial factors in producing the injuries that Karel has endured since the agreement was breached. See Mahoney v. Beatman, 110 Conn. 184,198, 147 A. 762 (1929). To put it another way, Sheldon's breach of the agreement is not "the sole proximate cause" of Karel's subsequent injuries. Oberempt v. Egri, 176 Conn. 652, 655,410 A.2d 482 (1979). (Emphasis in original.)
Moreover, it must be borne in mind that Sheldon's breach was a type of behavior that was readily forseeable at the time of the initial abduction. "The test is whether the harm that occurred was of the same general nature as the forseeable risk created by the defendant's [tortious conduct]." Merhi v. Becker, 164 Conn. 516, CT Page 6298 521, 325 A.2d 270 (1973). "When. . .the intervening act is a natural and foreseeable consequence of a circumstance created by defendant, liability will subsist." Kush by Marszalek v. City of Buffalo, 59 N.Y.2d 26, 449 N.E.2d 725, 729, 462 N.Y.S.2d 831
(1983). Since Sheldon's breach of the agreement was a natural and forseeable consequence of a circumstance created by the defendants here, that agreement in no way ended the wrongdoing of any of the defendants.
13. State whether or not the court considered that the joint custody agreement between plaintiff and Sheldon Marshak on April 22, 1966 ended the alleged wrongdoing of any of the parties.
For the reasons stated in response to #12, this contention has been considered and rejected.
14. State whether or not the court considered that after the new arrangement was entered into by the husband and wife, that the defendant, James Ambadjes, was not a party to any subsequent problems of the husband and wife.
For the reasons stated in response to #12, this contention has been considered and rejected.
15. State whether or not the court considered that James Ambadjes should be responsible to the plaintiff for damages limited to the period from August 6-7, 1985, to April 22, 1986.
For the reasons stated in response to #12, this contention has been considered and rejected.
19. State whether or not the court considered that the agreement of the plaintiff and the alleged co-conspirator, Sheldon Marshak, of April 22, 1986 wherein the parties agreed to joint custody of the children and the plaintiff agreed to cancel all criminal and civil proceedings that had been instituted, to terminate all wrongdoings, if any, between August 6, 1985 and April 22, 1986.
This contention has been considered and rejected. In addition to the considerations described in response to #12, the court points out that Sheldon never complied with the agreement, and that none of the defendants here were parties to the agreement in the first place. The action here had not even been instituted at the time. The agreement could not possibly, under the circumstances, operate to "terminate all wrongdoings" of these defendants.
20. State whether or not the court considered that the agreement between the wife and husband of April 22, 1986, had any CT Page 6299 effect upon the legal status of the parties and whether it changed any legal relationships.
The agreement was obviously intended to change the legal relationship between Karel, Sheldon, and their children. A lawyer or judge writing on April 22, 1986, would have said that it did change these legal relationships. Alas, the agreement was not complied with. With respect to these legal relationships, the agreement has plainly been superceded by Judge Wall's decision of July 2, 1987, and the decision of the Jerusalem court of November 19, 1987. With respect to the defendants here, for reasons already explained, the court views the agreement as having no effect whatsoever.
21. State whether or not the court considered the exclusive physical custody that the plaintiff had of the children while in Israel in determining the legal relationship of any or all of the parties.
Although the court does not agree with the characterization of "exclusive physical custody," it considered this contention. See the first paragraph of p. 14 of its decision.
22. State whether or not the court considered that the agreement of April 22, 1986 and the exclusive physical custody that the plaintiff had of the children while in Israel had any effect upon the alleged culpability of the defendant, James Ambadjes.
For the reasons stated in response to Nos. 12 21, this contention has been considered and rejected.
23. State whether or not the court considered that the agreement of April 22, 1986 and the exclusive physical custody of the children by the plaintiff attenuated the culpability of the defendant, James Ambadjes.
For the reasons stated in response to Nos. 12 26 this contention has been considered and rejected.
24. State whether or not the court considered that the agreement of April 22, 1986 and the exclusive physical custody of the children by the plaintiff attenuated damages for which the defendant, James Ambadjes, was responsible.
For the reasons stated in response to Nos. 12 21, this contention has been considered and rejected.
Dated at Waterbury, this 30th day of June, 1992.
/s/ Jon C. Blue, J. JON C. BLUE Judge of the Superior Court CT Page 6299-A