[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE
Defendants Diane Grace Daddona a/k/a Diane Grace Blake and Paul R. Daddona executed and delivered a certain Note (the "Note") dated January 3, 1986 in favor of Mechanics and Farmers Savings Bank, FSB. The obligations of the Note are, among other things, secured by a certain Open-End Mortgage dated January 3, 1986 executed by D. Daddona; in favor of Mechanics Farmers, and recorded in Volume 2699 at Page 130 of the City of Stamford Land Records, granting to Mechanics Farmers, among other things, a mortgage on certain property known as 19 Half Moon Way, Stamford, Connecticut, together with certain other property and rights as described in the Mortgage.
Prior to August 9, 1991, Mechanics Farmers was a federal savings bank organized and existing under the laws of the United States of America, and having a principal place of business in Bridgeport, Connecticut. On August 9, 1991, the Director of the Office of Thrift Supervision determined that Mechanics Farmers was insolvent. The Director made an order, dated August 7, 1991, appointing the Federal Deposit Insurance Corporation receiver of Mechanics Farmers (the "FDIC") pursuant to 12 U.S.C. § 1821(c).
On August 9, 1991, the FDIC, acting pursuant to 12 U.S.C. § 1821, took possession of the assets of Mechanics Farmers, and thereby succeeded to all of the rights, titles, powers and privileges thereof, including all of Mechanics Farmers' right, title and interest in and to the Note, the Mortgage and the Property. Thereafter, on December 1, 1994, the FDIC sold and assigned to Mundaca all of its right, title and interest in and to the Note, the Mortgage and the Property. Mundaca, which is a foreign corporation, is the owner and holder of the Note and the CT Page 136 Mortgage.
By letter dated November 16, 1992, Consolidated Asset Recovery Corporation ("Consolidated"), as servicer for the FDIC, notified the Daddonas that, among other things, the Note and Mortgage were in default, and made demand for payment of all arrearage under the Note and Mortgage. Consolidated further notified the Daddonas that, among other things, in the event Consolidated did not receive payment of the arrearage in full, the entire principal balance outstanding under the Note and Mortgage (including, but not limited to, all principal, interest and all other outstanding charges and costs due thereunder) would be accelerated and declared immediately due and payable.
By letter dated February 28, 1995, Mundaca, among other things, made demand upon the Daddonas for payment of the entire outstanding indebtedness due under the Note and the Mortgage on or before March 10, 1995. Mundaca further notified the Daddonas of their rights under P.A. 93-414, An Act Concerning Emergency Mortgage Assistance and the Housing and Community Development Act of 1991, as amended.
Mundaca filed suit to foreclose on the Property, to procure a deficiency judgment if necessary, and for other relief as outlined in Plaintiff's Complaint dated March 15, 1995. By way of their Answer, Special Defenses and Cross Complaint dated July 1, 1995, the Daddonas have attempted to defend against this foreclosure action by setting forth a single special defense, namely that Mundaca is barred from prosecuting this action because it is a foreign corporation (i) not registered with Connecticut Secretary of the State to do business within the State of Connecticut, (ii) not licensed by the State of Connecticut Banking Commission, and (iii) not licensed by the Connecticut Insurance Commissioner. In addition, the Daddonas have set forth two counterclaims herein seeking setoffs based on (i) the "negligent" delay of the Resolution Trust Corporation ("RTC") in endorsing an insurance loss check over the Daddonas and (ii) the RTC's alleged failure to allow the Daddonas to correct a default in the Mortgage.
It is well established that one of the purposes of a motion to strike is to test the legal sufficiency of special defenses and counterclaims. See Conn. Prac. Book § 152; Gordon v. BridgeportHousing Authority, 208 Conn. 161, 170 (1988). For the purpose of ruling upon Mundaca's Motion To Strike, the Court must deem as admitted all of the Daddonas' well plead facts and construe those CT Page 137 facts in the light most favorable to the Daddonas. See Malony v.Conroy, 208 Conn. 392, 394 (1988); Amodio v. Cunningham, 182 Conn. 800,820 (1980). In ruling on a motion to strike, however, the court is limited to the facts alleged in the pleadings, see Gordon,208 Conn. at 170, and neither legal conclusions nor the truth or accuracy of opinions are deemed admitted. See Mingachos v. CBS,Inc., 196 Conn. 91, 108 (1985).
In their Special Defense, the Daddonas claim that this action must be dismissed because Mundaca, as a foreign corporation allegedly engaged in banking-related activities, is not authorized or licensed to do business in the State of Connecticut.[1]
Under Connecticut General Statute ("Conn. Gen. Stat.") § 33-396,
 [n]no foreign corporation . . . shall transact business in this state until it has procured a certificate of authority to do so from the secretary of the state. . . .
A foreign corporation which transacts business in violation of Conn. Gen. Stat. § 33-396 is subject to the penalties set forth in Conn. Gen. Stat. § 33-412, which states, in pertinent part, as follows
 No foreign corporation transacting business in this state in violation of section 33-396 shall be permitted to maintain any action, suit or proceeding in any court of this state unless such corporation has obtained a certificate of authority. . . .
Notwithstanding the foregoing, however, the Connecticut legislature has set forth certain specific activities of foreign corporations which are not construed as "doing or transacting business" in the State of Connecticut, and for which no certificate of authority is required. Specifically, Conn. Gen. Stat. § 33 397(a) provides, in pertinent part, that
 [a]ny foreign corporation may purchase, hold, mortgage, lease, sell and convey real and personal estate in this state for its lawful uses and purposes, and may hold such property as it may acquire by foreclosure or otherwise in payment of debts due such corporation without such action constituting transacting business in this state for the CT Page 138 purposes of this chapter.
Moreover, Conn. Gen. Stat. § 33-397 (b)(6) and (7), as applicable, provide that a foreign corporation shall not be considered to be transacting business in Connecticut by reasons of "(6) creating evidences of debt, mortgages or liens on real or personal property; [or] (7) taking security for or collecting debts due it or enforcing any rights in property securing the same;. . ."
In the present case, Mundaca has not transacted business in violation of Conn. Gen. Stat. § 33-396 because its loan activity involving the Daddonas falls within the exception set forth in Conn. Gen. Stat. § 33-397(a). Indeed, there can be no dispute that Mundaca's acquisition of the Note and Mortgage constituted holding a mortgage (within the ambit of § 33-397(a) and (b)(6)) and the taking of security (within the ambit of § 33-397 (b)(7). Accordingly, Mundaca was not required to obtain a certificate of authority in order to purchase the Note and Mortgage, and it is not barred by Conn. Gen. Stat. § 33-412 from prosecuting this action against the Daddonas.
Under Conn. Gen. Stat. § 36-5a(a),
 [n]o foreign banking corporation shall transact in this state the business authorized by its certificate of incorporation or by the laws of the state under which it was organized, unless empowered so to do by some general or special act of this state, . . . provided, without excluding other activities which may not constitute transacting business in this state. . . .
A foreign banking corporation which transact business in violation of Conn. Gen. Stat. § 36-5a is subject to the penalties set forth in Conn. Gen. Stat. § 33-412, including the aforementioned preclusion from maintaining any proceeding in Connecticut courts. See FDIC v.Mark David-Washington Blvd. Associates, 850 F. Sup. 121, 122 (D.Conn. 1994). Similar to the laws applicable to foreign corporations in general, however, the Connecticut legislature has set forth for foreign banks certain specific activities which are not construed as "doing or transacting business" in the State of Connecticut, and for which no certificate of authority is required. Specifically, Conn. Gen. Stat. § 36-5g provides that "no foreign banking corporation, which makes mortgage loans in this state secured by mortgages on real estate located in this state shall be deemed to be doing or transacting business in this state solely CT Page 139 when making such loans." This exception has been broadly construed as applying to "a foreign bank's mortgage-backed loan activity in Connecticut" FDIC v. Mark David-Washington Blvd. Associates,850 F. Supp. at 120.
Mundaca has not transacted business in violation of Conn. Gen. Stat. § 36-5a(a) because its loan activity involving the Daddonas falls within the exception carved out by Conn. Gen. Stat. § 36-5a(g). Indeed, there can be no dispute that Mundaca's acquisition of the Note and Mortgage constituted "mortgage-backed loan activity" as encompassed under § 36-5a(g). Accordingly, Mundaca was not required to obtain a certificate of authority in order to purchase the Note and Mortgage, and it is not barred by Conn. Gen. Stat. § 33-412 from prosecuting this action against the Daddonas.
In their Special Defense, the Daddonas also claim that this action should be dismissed because Mundaca is not licensed by the Connecticut Banking Commissioner to "engage in mortgage investment banking in the State of Conn." or by the Connecticut Insurance Commissioner to "engage in mortgage origination, mortgage brokerage, to act as investment advisors as it relates to mortgages, or to purchase, or to resell and/or forclose [sic] mortgages within the State of Conn." The Daddonas have cited no authority under Connecticut law requiring a foreign corporation such as Mundaca to obtain a license to purchase or enforce a mortgage, which are the only activities at issue in this action. That portion of the Special Defense pertaining to licensing requirements is unfounded and is stricken as a matter of law.
The Daddonas have set forth two counterclaims herein seeking setoffs based on (i) the alleged failure of the RTC to endorse an insurance loss check over to the Daddonas to "correct" a default in the Mortgage. Because neither of the Counterclaims implicate Mundaca in any way whatsoever, and, in fact, actually pertain to the alleged conduct of a separate entity, the Counterclaims is stricken herein as a matter of law.
In their Insurance Counterclaim — which purports to state a negligence claim — the Daddonas allege that there was a roof fire at the Property and that the RTC failed to endorse over to them a jointly-issued insurance check in the amount of $28,172.00 for the fire damage. The Daddonas also allege that by virtue of the RTC's "negligence and delays" in endorsing the insurance check, the Property suffered water damage in the amount of $29,252.00. Completely absent from the Insurance Counterclaim is any allegation CT Page 140 whatsoever that Mundaca was involved in the RTC's alleged conduct; consequently, the Insurance Counterclaim is stricken.
It is well established under Connecticut tort law that a party is not liable for another's injury unless such party in fact caused the injury. See Teitelman v. Bloomstein, 155 Conn. 653, 657
(1967); Magarian v. Bessoni, 160 Conn. 442, 445 (1971); Hall v.Winfrey, 27 Conn. App. 154, 158 (1992). Indeed, the Connecticut Supreme Court has determined that "[t]o constitute such causal relationship between defendant's tort and plaintiff's damage as will suffice to maintain an action of tort, the defendant's tort must have been a substantial factor in producing the damage complained of." Mahoney v. Beatman, 110 Conn. 184, 195 (1929). Therefore, in order to state a legally sufficient tort claim, there must be an allegation that some conduct of the alleged tortfeasor was a "substantial factor" in causing the damage claimed.
In the present case, there is no allegation that Mundaca was even minimally involved in the circumstances underlying the Insurance Counterclaim — much less that any conduct of Mundaca was a "substantial factor" in causing the Daddonas' water damage. Rather, the Insurance Counterclaim is based solely on alleged "negligence and delays" of the RTC.
Moreover, contrary to the Daddonas's assertions, Mundaca is not liable for the alleged negligence or the RTC merely by virtue of having purchased the Note and Mortgage from the FDIC and taking an assignment of such documents. Indeed, under Connecticut law, an assignment relationship does not automatically impute the liability in negligence of the assignor to the assignee. See, e.g., Marronv. H. O. Penn Machinery Co., Inc., 518 F. Sup. 1069 (D.Conn. 1981) (assignee of lease not liable in tort for negligence, breach of implied warranty, or strict liability of the original lessor).
As a result of the foregoing, the Insurance Counterclaim is not properly stated against Mundaca and is stricken as a matter of law.
The Mortgage Counterclaim which appears to be a breach of contract claim is stricken as a matter of law because it does not implicate any conduct of Mundaca. Indeed, in the Mortgage Counterclaim (and the associated prayer for relief), the Daddonas contend that they contacted the RTC, as agent of the FDIC, "to cure the default" under the Mortgage. The Daddonas also claim that the RTC, by not contacting them regarding their alleged proposal to CT Page 141 correct the default, "did not allow the Defendants to correct the default, which [they] had the right to do under the terms of the Mortgage." Id. Of particular significance is the fact that the Daddonas do not plead that they attempted at any time to tender to the RTC (or to any other applicable party) the overdue amounts under the Mortgage, an act which is expressly required for reinstatement of the Mortgage pursuant to Paragraph 18 thereof.
Similar to the Insurance Counterclaim, there is no allegation that Mundaca was even minimally involved in the circumstances underlying the Mortgage Counterclaim. Rather, the Daddonas plead that they are entitled to a setoff against Mundaca — as assignee of the FDIC — of interest, late charges and advances due under the Mortgage "because the R.F.C. [sic] did not allow [them] to correct the default in their Mortgage at 19 Half Moon Way." Answer (Prayer For Relief) at Page 7. Apparently, at the time of the RTC's (or FDIC's) alleged breach of the Mortgage, Mundaca had not yet purchased the Mortgage.
As previously argued, Mundaca is not liable for the alleged conduct of the RTC merely by virtue of having purchased the Note and Mortgage from the FDIC and taking an assignment of such documents. Indeed, as previously noted, the acts of the assignor are not imputed to the assignee. See Marron v. H. O. PennMachinery Co., Inc., 518 F. Sup. 1069 (assignee not liable for assignor's breach of contract). Moreover, at the time of the RTC's alleged breach of the Mortgage, no privity of contract existed between Mundaca and the Daddonas, rendering the Mortgage Counterclaim insufficient as a matter of law. Accordingly, the Mortgage Counterclaim fails to state a claim against Mundaca and is stricken as a matter of law.
For all of the foregoing reasons, Mundaca's Motion To Strike should be granted as to the Special Defense and the Counterclaims raised in the Defendants' Answer, Special Defenses and Cross Complaint dated July 1, 1995.
Dated at Stamford, Connecticut this 2nd day of January, 1996.
HICKEY, J.