MEMORANDUM OF DECISION

WILSON, J.

INTRODUCTION

The plaintiffs Third Amended Complaint alleges that on September 2, 2008 a mobility scooter that he had rented from the defendant “unexpectedly accelerated, throwing him to the ground, and causing the plaintiff severe personal injury and damage. He alleges that the defendant was negligent in one or more of the following ways:
“5. The injuries and damages sustained by the plaintiff were caused by the negligence and carelessness of the defendant in that they:
a. Failed to inspect the scooter to ensure it was in proper working order, free from defects that could possibly lead to accidents or otherwise cause injury to the operator or other patrons;
b. Failed to make appropriate repairs to the scooter to ensure the same was in proper working order in an effort to avoid injury to the operator or other patrons;
c. Failed to provide the plaintiff with any training, manual, or other instructions as to the proper use of the scooter, including but not limited to the use and function of the key;
d. Failed to ensure the plaintiff was comfortable and confident in his ability to operate the scooter, pri- or to renting the same to him, including but not limited to the use of the function key;
e. Failed to provide their employees with adequate training as to the proper use of the scooter, including but limited to the use and function of the key;
f. Failed to educate renters of the scooter with the proper safety procedures for the use of the scooter as set forth in the owners’/users’ manual for the scooter, contrary to manufacturer’s warnings within the manual and on the console of the scooter;
g. Failed to choose the proper scooter for use by its patrons such as those normally used or commercial customers, rather than those used as personal scooters, which was chosen here and used improperly for commercial purposes, *197 against the original manufacturer’s design intent;
h. Failed to choose the proper scooter for commercial use which would have included a different key system, such as a plug type key system, in said scooter which would have disabled the scooter once the key was pulled from the ignition which could have prevented the sudden acceleration of the scooter and thus, the plaintiffs injuries;
i. Failed to choose the proper scooter for commercial use which would have included a seat pressure interlock switch that disables the scooter once a person begins to get up from the seat on the scooter, which could have prevented the sudden acceleration of the scooter and thus, the plaintiffs injuries;
j. Failed to choose the proper scooter for commercial use which would have included an additional open and obvious brake lever;
k. Failed to evaluate the design of the scooter to ensure that it was proper for its intended use in the commercial rental of personal mobility devices; and
l. Failed to place additional warnings on the scooters alerting renters and/or users of scooters as to the safety devices available to prevent injury and/or accidents from occurring.”
The defendant denied the operative allegations of the complaint and affirmatively alleged the following special defenses, which defenses are denied by the plaintiff;
“FIRST SPECIAL DEFENSE
By his written agreement executed on September 1, 2008, the plaintiff has voluntarily waived his right to pursue a claim for personal injuries arising out of the use of the rented scooter which is the subject of this litigation.
SECOND SPECIAL DEFENSE
The plaintiff is barred from pursuing this action by the doctrine of estoppel, the defendant having relied on his written representation of September 1,2008, which states in part that he “... agrees that the Owner is not responsible for accidents or injuries caused directly or indirectly in the use of the rented equipment”.
THIRD SPECIAL DEFENSE
The plaintiff is barred from recovering damages for alleged personal injuries against the defendant by his contractual representation dated September 1, 2008 that he “ASSUMES ALL RISKS ASSOCIATED WITH THE USE OF THE SCOOTER”.
FOURTH SPECIAL DEFENSE
Any injuries or damages sustained by the plaintiff were caused by his misuse of the motorized scooter which he rented from the defendant on September 1, 2008.
FIFTH SPECIAL DEFENSE
Any injuries or damages sustained by the plaintiff were caused by his own negligence and/or carelessness in one or more of the following ways:
(a) he failed to operate the rented scooter in a safe and prudent manner;
(b) he attempted to exit the scooter without taming it off or disengaging the operating mechanisms;
(c) he failed to maintain control of the rented scooter;
(d) he failed to make reasonable use of his senses and faculties; and/or
*198 (e) he accidentally activated the drive mechanism as he was exiting the scooter.
SIXTH SPECIAL DEFENSE Any judgment entered on behalf of the plaintiff is subject to reduction for collateral source payments made by third party insurers or providers.
SEVENTH SPECIAL DEFENSE The plaintiffs claims are time-barred by the one year statute of limitations set forth in section 3-246 of the Mohegan Tribe of Indians Code.
EIGHTH SPECIAL DEFENSE The plaintiffs complaint fails to set forth a recognized cause of action for which relief can be granted as the plaintiffs exclusive remedy is a claim brought pursuant to Connecticut’s Products Liability Act, C.G.S. § 52-572m, et. seq”
This case was tried to the Court. At the conclusion of the trial, the court visited the scene of the plaintiffs fall, accompanied by counsel for both parties. Briefs were filed on June 24, 2011. The scooter in question was identified, entered into evidence, and made an exhibit in this case. After consideration of the record and briefs, the view of the scene, and an examination of the scooter, the court enters judgment for the defendant.

FACTS

The plaintiff was a frequent visitor to the defendant’s casino and on at least five previous occasions he rented mobility scooters from the defendant. On September 1, 2008 he visited the casino and rented a scooter. He was not given any instructions as to how to operate the scooter, nor was he given any documents on how to use the scooter. After five or six hours at the casino, the plaintiff decided to leave, early in the morning of September 2, 2008. He drove the scooter to the valet parking area to await his motor vehicle, He testified that he got off the scooter, and that after he got off, the scooter pushed him, causing him to go “flying” to the pavement. As a result of the fall he sustained a hip fracture and an aggravation of preexisting spinal conditions.
The defendant disputes that the scooter moved and produced two witnesses, Thomas and Pamela Malloy, who testified that the scooter did not move, but that the plaintiff stumbled or tripped on the curb.
The defendant contests the plaintiffs version of the accident; contends that it was not negligent; contends that any action or inaction on its part was not a proximate cause of the plaintiffs injuries; and also disputes the nature and extent of the plaintiffs injuries arguing that the plaintiff had a seriously disabling pre-ex-isting condition of the spine, and that the hip injury did not significantly impact on the plaintiffs functionality.
The mechanics of the operation of the scooter is important to this case. The scooter is a “Pride Mobility” Scooter. It is a battery operated electric scooter. The battery is activated by the insertion of a key into a key hole in the body of the scooter. The insertion of the key is what activates the battery, i.e., enables the battery to propel the scooter when the acceleration levers on the handle bar of the scooter are depressed. When the right hand lever is depressed, with the key in place, the scooter moves forward. When the left hand lever is depressed, it moves in reverse. Although the key turns in the key hole, the turning of the key is of no significance. It is unlike the typical motor vehicle ignition key which must be turned to start the ignition. The scooter battery is activated, ready to start the motor, and propel the scooter as soon as the key is inserted. The scooter is designed so that if the key is removed, the depressing of *199 the levers will not propel the scooter. The scooter is also designed to be immobile if the levers are not depressed, whether or not the key is in the key hole.
Various demonstrations were made concerning these matters at trial, and the Court finds that the scooter did operate as designed. The plaintiffs expert witness did not find any defects in the scooter and indeed the plaintiff also does not claim that the scooter was defective.
The plaintiffs claims, rather, is that the scooter was so designed that, if the key were left in the key hole, the scooter could unintentionally move and that is what he alleges happened in this case. The plaintiff argues that he was not given instructions to remove the key or otherwise given operating instructions. Significantly, as will appear later, the plaintiff testified that he did not remember whether he removed the key from the key hole.

STANDARD OF CARE

The plaintiff, as a guest of the defendant lawfully on the defendant’s premises, was an invitee of the defendant. As such, the defendant owed to the plaintiff the duty of exercising reasonable care. Under the Mohegan Torts Code, M.T.O. Sec. 3-241 et seq., the defendant may be liable to an invitee for the “failure to fulfill a legal duty. It includes acts proximately causing or substantially contributing to injury or damages” See M.T.O. Sec. 3-241, definition of “Fault.”
The plaintiff has introduced substantial probative evidence bearing on the defendant’s failure to exercise due care in the rental of the scooter to the plaintiff. First, the plaintiffs own testimony, which the court credits, was that he was not given any instructions, oral or written, on the operation of the scooter. Also, the plaintiffs expert, Mr, Peter Chen, testified credibly as to what warnings and instructions could have been, but were not, provided to the plaintiff. Finally, the plaintiff introduced evidence as to the inadequacy of the training of the defendant’s employees in the operation and rental of the scooters. It appears from this evidence that the defendant’s employees were not very well familiar with the entire owner’s manual, did not very well understand the function of the key and how it operated, and were not well-equipped properly to instruct patrons of the casino as to the safe operation of the scooter. However, proof of negligence alone is not enough for the plaintiff to establish his case. Proof of proximate cause is also essential.

PROXIMATE CAUSE

In a personal injury action, to be entitled to damages, the plaintiff must establish a causal connection between his injuries and the defendant’s negligence, and this causal connection must rest on more than surmise. Yarasavich v. Mohegan Tribal Gaming Authority, 4 G.D.R. 66, 10 Am. Tribal Law 176 (2010). Where an essential element of plaintiffs case is unknown left to conjecture or surmise, judgment for the defendant is appropriate. Id, at 67,10 Am. Tribal Law 176. “A causal relation between the defendant’s wrongful conduct and the plaintiffs injuries is a fundamental element without which a plaintiff has no case.... To establish causation the plaintiff must do so without resort to conjecture.... These are the kinds of situations that trigger the application of the basic principle of tort law that no matter how negligent a party may be, if his act bears no causal relation to the injury, it is not actionable.... A determination of causation on the basis of conjecture or speculation is precisely what we cannot permit.” Id. at 67-68,10 Am. Trib *200 al Law at 179, (citations and internal quotation marks omitted.)
Connecticut adheres to the substantial factor theory of proximate causation: “To constitute such a causal relation between defendant’s tort and plaintiffs damage as will suffice to maintain an action of tort, the defendant’s tort must have been a substantial factor in producing the damage complained of.” Mahoney v. Beatman, 110 Conn. 184, 195, 147 A. 762 (1929); Kinderavich v. Palmer, 127 Conn. 85, 15 A.2d 83 (1940). This is the test in this court. Paladino v. Mohegan Tribal Gaming Authority, 2 G.D.R. 34, 35, 4 Am. Tribal Law 577 (2003).
A substantial factor must be a real time factor that produces the result.
The question is not whether there could be a causal relationship between the defendant’s negligence and the injury, but whether the facts reasonably support an inference that the defendant’s negligence was a proximate cause of the plaintiffs injury. The plaintiff is bound to remove the issue of proximate cause from the realm of speculation by establishing facts affording a logical basis for the inferences he claims. See Vastola v. Connecticut Protective System, Inc., 133 Conn. 18, 20-21, 47 A.2d 844 (1946).
To find proximate cause upon the facts here would be to find it upon no more substantial basis than a surmise or conjecture. This the law will not permit. See Vastola v. Connecticut Protective System, Inc. 133 Conn. 18, 21, 47 A.2d 844 (1946). See generally, 57A Am.Jur.2d Negligence § 458.
Plaintiffs proof of proximate cause fails at several levels. First, there is no evidence of any defect in the scooter. The plaintiffs claim is that if the key was removed, the scooter would not move. Conversely, if the key were not removed, it veas possible that the scooter could move. The plaintiffs own testimony is that he did not remember if he removed the key or not. Therefore, whether the key was in, or not in the keyhole remains in the realm of speculation.
Further, even if the key were in the keyhole, it is speculation as to what might have caused this scooter to move. The plaintiff has argued that radio frequency interference (RFI) or electromagnetic interference (EMI) could have caused the scooter to move. But this is speculative. The plaintiffs expert witness, Mr. Peter Chen, a well-qualified mechanical engineer, with experience in electromechanical equipment, did not perform any tests, or provide any opinions, concerning the existence of EMI at the site of the plaintiffs accident. It is a fair inference from his testimony that EMI is rare and infrequent; that “it may never happen and one time it could occur.”
Also, if the key were left in, even in the absence of RFI or EMI, the scooter could move if the user inadvertently depressed the motion lever on the handle bar. All this is left to speculation. What isn’t subject to speculation, i.e,, what was demonstrated at trial, is that the scooter was not subject to rolling or unintentional movement with either the key plugged in or completely removed. In short it is left to speculation whether the key was plugged in or was removed. If the key were removed, the court finds that the scooter would not move. However, even if the key were plugged in, the scooter was also not subject to rolling or unintentional movement. The only way in which the scooter could move with the key plugged in would be (1) by depressing one or the other of the forward or reverse levers on the handle bar, or (2) the theoretical and rare possibility of EMI or RFI. The plaintiff specifically does not assert that he inad *201 vertently or otherwise depressed either of the levers. That is not a possible inference in this case because there is no evidence to support it (and if there were it would raise significant, if not insurmountable barriers of comparative negligence.) That leaves only the remote possibility of EMI or RFI, which the court finds to be too speculative to form the basis for a finding of proximate cause. In the absence of this essential element of the plaintiffs case, judgment must enter for the defendant.