USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 96-2106 BATH IRON WORKS CORPORATION, BIRMINGHAM FIRE INSURANCE COMPANY, Petitioners, v. DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR, Respondent. ____________________ ON PETITION FOR REVIEW OF AN ORDER OF THE BENEFITS REVIEW BOARD ____________________ Before Selya, Circuit Judge, _____________ Hill,* Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Kevin M. Gillis with whom Troubh, Heisler & Piampiano was on ________________ ____________________________ brief for petitioners Bath Iron Works Corporation and Birmingham Fire Insurance Company. Stephen Hessert with whom Norman, Hanson & DeTroy was on brief _______________ ________________________ for insurer respondent Liberty Mutual Insurance Company. Gary A. Gabree with whom Stinson, Lupton & Weiss was on brief for _______________ _______________________ claimant respondent Alvin D. Acord.  ____________________ September 10, 1997 ____________________ _________________________ *Of the Eleventh Circuit, sitting by designation. BOUDIN, Circuit Judge. Alvin Acord suffered injuries ______________ while employed by Bath Iron Works Corporation, and obtained benefits after state workers' compensation proceedings. He then sought and received a further award under the Longshore Act, 33 U.S.C. 901 et seq. On this appeal, we hold that _______ the federal award was barred by collateral estoppel, and, for the benefit of future litigants, we address briefly the alternative statute of limitations defense advanced by the petitioner insurer. The events and procedural history are complicated, but a condensed version will set the scene. Acord began work as a test electrician at Bath in 1974. In 1982 he suffered upper- body injuries and in 1983, a knee injury and knee surgery; and in 1984 he was transferred to a desk job. He sought disability benefits under the Maine Workers' Compensation Act, 39 Me. Rev. Stat. Ann. 1 et seq. (1989), and, in _______ October 1987, was awarded 25 percent partial disability benefits.  Between 1983 and 1987, Acord experienced a half-dozen incidents of trauma to his knee wherein some provocation would cause the knee to give way; one incident occurred in June 1987, when Acord stubbed his toe and then jammed his knee as he rose from his desk. Acord underwent further knee surgery and returned to his desk job in November 1987, now working only four hours a day based on his doctor's advice. -2- -2- Degenerative arthritis in his knee joints indicated that his condition would worsen. One year later, in November 1988, Bath's company physician told Acord that he was being let go. The record is murky but it was apparently Acord's own opinion that the coming winter would aggravate his knee, and it was the doctor's view that there would be no suitable work available if Acord's physical restrictions increased. Acord has since sought reemployment at Bath, without success. Birmingham Fire Insurance Company ("Birmingham"), which provided Bath's insurance coverage at the time of the June 1987 injury, began to pay Acord total disability benefits when he was dismissed in November 1988. But Birmingham also petitioned the Maine workers' compensation agency, asking it to declare that the insurer had no continuing liability for the June 1987 injury. In February 1989, after an evidentiary proceeding, a Maine commissioner held that Birmingham had proven that the June 1987 incident did not permanently contribute to Acord's condition; this decision was affirmed by the commission's appellate division in September 1990. In related proceedings, Acord asked the Maine agency to increase his previous and continuing 25 percent disability award based on the 1983 injury; Acord urged that his condition had worsened since 1983. After extensive proceedings, the Maine agency ruled in June 1992 that the -3- -3- original disability payment should be increased to 50 percent, representing increased disability since 1983, and that the payments should be made by Liberty Mutual Insurance Company. Liberty Mutual had been Bath's insurer at the time of the June 1983 injury. Shortly before this new ruling, Acord in March 1992 filed for federal workers' compensation benefits under the Longshore Act. It is not uncommon for employees connected to maritime affairs to be covered by both federal and state compensation statutes, and federal jurisdiction in this case has not been disputed. In the federal proceeding, Acord took the position that his June 1987 injury entitled him to permanent total disability benefits because it left him unable to fill the material handler position that he had previously held. Birmingham resisted Acord's federal claim on multiple grounds: that the claim, filed almost five years after the incident, was barred by the federal one-year statute of limitations, 33 U.S.C. 913; that collateral estoppel precluded Acord from claiming permanent injury based on the June 1987 incident; and that the medical evidence failed to support such a claim of permanent injury based on that incident. A federal administrative law judge took evidence on the federal claim, reserving judgment on the legal defenses. -4- -4- In September 1993, the federal ALJ issued a decision awarding permanent total disability benefits to Acord, and against Birmingham, from and after Acord's last day at work in November 1988. The decision rejected the collateral estoppel and statute of limitations defenses, on grounds described below, and concluded on the merits that the June 1987 incident had caused a permanent further aggravation in Acord's knee condition.  Birmingham sought review by the Department of Labor's Benefits Review Board, 33 U.S.C. 921(b), but the Benefits Review Board took no action on the matter. Because the matter had been pending before the Benefits Review Board for more than one year and the Benefits Review Board had taken no action on it, it became final for purposes of judicial review in September 1996. Pub. L. 104-134, 101(d), 110 Stat. 1321-219 (1996). Birmingham then sought review in this court. See 33 U.S.C. 921(c). Acord, needless to say, ___ supports the ALJ's decision. We agree with Birmingham that the federal ALJ should have given collateral estoppel effect to the Maine agency's determination, in its February 1989 decision, that the June 1987 injury "had no lasting effect on Mr. Acord's condition." The state agency finding, in turn, precludes Acord's present claim. Only the first of these two propositions requires much discussion. -5- -5- Often, respect for a prior judgment is mandated by the full faith and credit clause, U.S. Const. art. IV, 1, or its statutory counterpart, 28 U.S.C. 1738. A literal reader might doubt that either has much to do with the present case, because (among other reasons) the former constrains states, not federal entities, and the latter is directed explicitly to federal courts and says nothing about federal agencies. But the policy arguments for similar treatment--especially avoidance of duplicative litigation-- tend to be the same. Without dwelling overmuch on the rationale, the Supreme Court has instructed that "federal courts must give the [state] agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." University of Tennessee v. Elliott, 478 U.S. 788, 799 (1986). _______________________ _______ Ordinarily, the state agency must have been acting in an adjudicative capacity, United States v. Utah Constr. & Mining _____________ _____________________ Co., 384 U.S. 394, 422 (1966), but that condition is ___ satisfied in this case. And Maine does treat such agency findings as a proper basis for precluding relitigation. Van ___ Houten v. Harco Constr., Inc., 655 A.2d 331, 333-34 (Me. ______ ____________________ 1995). Of course, one could say that a federal court must respect state agency factfinding but a federal agency need not. Yet Elliott itself relied heavily upon Thomas v. _______ ______ -6- -6- Washington Gas Light Co., 448 U.S. 261, 281 (1980), where the ________________________ Supreme Court said that an agency finding in one state could bind another state's agency under the full faith and credit clause. Elliott, 478 U.S. at 798-99. And several circuit _______ decisions have held that a federal agency is normally bound to respect findings by another agency acting within its competence. West Helena Sav. & Loan Assoc. v. Federal Home _______________________________ ____________ Loan Bank Bd., 553 F.2d 1175, 1180-81 (8th Cir. 1977); Safir _____________ _____ v. Gibson, 432 F.2d 137, 143-44 (2d Cir.) (Friendly, J.), ______ cert. denied, 400 U.S. 850 (1970). ____________ Although the tendency is plainly in favor of applying collateral estoppel in administrative contexts, the subject is a complex one, with many variations; and it is perhaps well not to generalize too broadly. See 18 Wright & Miller, ___ Federal Practice and Procedure 4475, at 762-63 & n.3 ________________________________ (1981). Here, no conflict exists between the tendency of the courts and the position of the agency involved, because the Benefits Review Board itself has declared that collateral estoppel effect is to be given under the Longshore Act to appropriate findings of "other state or federal administrative tribunals." Barlow v. Western Asbestos Co., ______ _____________________ 20 B.R.B.S. (MB) 179, 180 (1988); see also Vodanovich v. _________ __________ Fishing Vessel Owners Marine Ways, Inc., 27 B.R.B.S. (MB) _________________________________________ 286, 290-92 (1994). -7- -7- In this case, the refusal of the federal ALJ to respect the Maine finding appears to have been based on a misunderstanding of Supreme Court case law on another subject.1 However, Acord seeks to defend the result on narrower and more conventional grounds. He argues that differences in burdens of proof, and in the substantive standards, under the Maine and federal compensation schemes make collateral estoppel inappropriate. These are legitimate arguments, but they ultimately do not succeed in this case. It is quite true that collateral estoppel effect may be denied because of differences in burden of proof (for example, where the victor in the first case has a greater burden in the second). Newport News Shipbuilding & Dry Dock ____________________________________ Co. v. Director, OWCP, 583 F.2d 1273, 1278-79 (4th Cir. ___ _______________ 1978), cert. denied, 440 U.S. 915 (1979). Here, Birmingham, ____________ by seeking a judgment from Maine limiting its liability, undertook the burden of proving, by a preponderance of evidence, that the June 1987 incident had no permanent effect. See Nichols v. Viner Bros., Inc., 573 A.2d 789, 790 ___ _______ __________________  ____________________ 1The ALJ said that collateral estoppel could not apply because state workers' compensation schemes and the Longshore Act share concurrent jurisdiction. See Sun Ship, Inc. v. ___ _______________ Pennsylvania, 447 U.S. 715, 722 (1980). But concurrent ____________ jurisdiction, and even the possibility of successive awards, do not tell one anything about collateral estoppel. See ___ Thomas, 448 U.S. at 280-82. ______ -8- -8- (Me. 1990). The Maine agency concluded that this burden had been carried. In the federal agency proceeding, Birmingham bore no heavier burden; if anything, it had a lighter one. Acord himself had the burden of proving permanent injury from the June 1987 incident, although he was aided by a conditioned federal presumption that "the claim comes within the provisions of this chapter." 33 U.S.C. 920(a). This presumption merely requires an employer to provide "substantial evidence" that the accident did not cause the harm, and then the presumption vanishes. Brown v. _____ I.T.T./Continental Baking Co. & Ins. Co., 921 F.2d 289, 295 _________________________________________ (D.C. Cir. 1990); Sprague v. Director, OWCP, 688 F.2d 862, _______ ______________ 865-66 (1st Cir. 1982). Thus, Acord's first argument fails. Acord next argues that the federal regime employs different substantive standards than the Maine regime, and points to a tradition of interpreting the Longshore Act "liberally" in favor of claimants. Voris v. Eikel, 346 U.S. _____ _____ 328, 333 (1953). Certainly a difference in the legal standards pertaining to two proceedings may defeat the use of ___ collateral estoppel. See Restatement (Second) of Judgments  ___ _________________________________ 28(3), (4) (1982); cf. Long Island College Hosp. v. NLRB, 566 ___ _________________________ ____ F.2d 833, 842, 844-45 (2d Cir. 1977), cert. denied, 435 U.S. ____________ 996 (1978). But this is so only where the difference undermines the rationale of the doctrine. -9- -9- Here, in the Maine proceeding, Acord's doctor, Donald Kalvoda, as well as another treating physician, Mark Henry, testified that Acord suffered from degenerative arthritis in his knee which was worsening with the passage of time and could have been temporarily exacerbated by the June 1987 injury; but both doctors said unequivocally in the state proceeding that the June 1987 incident had no lasting effect. The state agency so found. It is hard to see why this factual finding should be affected by whether the pertinent statute is broadly or narrowly construed. Similarly, we agree with Acord that federal and Maine law deal somewhat differently with cases where a later job- related injury aggravates an earlier one. Federal case law may depart from Maine's approach by making the later employer or insurer liable for the cumulative injury, Liberty Mut. _____________ Ins. Co. v. Commercial Union Ins. Co., 978 F.2d 750, 756 (1st ________ _________________________ Cir. 1992), and mitigating this liability through a complex statutory regime. 33 U.S.C. 908(f). But again, this difference has no apparent logical bearing on the factual question whether the June 1987 event caused permanent injury. Our own research suggests that the most pertinent difference between federal and Maine law may lie in a different area. Maine case law may be more grudging in its willingness to compensate the aggravation of an existing condition where the aggravation appears to be part of normal -10- -10- life rather than the result of some increased risk peculiar to the job.2 If there were any indication that this attitude had influenced the Maine agency finding at issue in this case, there might be reason to hesitate in giving collateral estoppel effect to this finding. But the expert medical evidence in the Maine proceedings (already described) pointed directly to the conclusion reached by the Maine agency: that the June 1987 incident caused no permanent injury. There is no hint whatever that the Maine agency thought that a permanent injury had occurred in June 1987 but should be disregarded because it was not compensable under Maine law. Whether the Maine factual finding was right or wrong, the agency was not evidently influenced by any difference between federal and Maine law. The Maine finding may have been wrong, even though amply supported by the evidence offered in that case. The federal ALJ reached a different conclusion by crediting slightly different deposition testimony from Dr. Kalvoda given after _____ the Maine proceeding; the ALJ also chose to place weight on Acord's testimony that he had begun to suffer a different sort of pain after the June 1987 incident. If the ALJ  ____________________ 2Compare Gardner v. Director, OWCP, 640 F.2d 1385, 1387, _______ _______ ______________ 1389 (1st Cir. 1981) (aggravation from standing on hard surfaces compensable under Longshore Act) with Hamm v. ____ ____ University of Maine, 423 A.2d 548, 550-51 (Me. 1980) ______________________ (aggravation from chopping salad not compensable under Maine statute). -11- -11- decision were before us on the merits, it would probably be sustained, given the deference due to the factfinder. But the point of collateral estoppel is that the first determination is binding not because it is right but because it is first--and was reached after a full and fair opportunity between the parties to litigate the issue. Acord has given us no reason to doubt that he had that opportunity in the Maine proceeding. And, it is by no means clear that the Maine result was wrong: the issue, as in many medical causation matters, was probably a close call. At oral argument, Acord offered yet another argument against collateral estoppel in workers' compensation matters, saying that in Maine (as elsewhere) a change in medical condition often allows the reopening or renewal of a prior claim. Admittedly, this practice (evidenced here by the 1992 increase in Acord's own award to 50 percent) is a limitation on conventional res judicata. In a civil tort action, a _____________ court will not normally reopen a final judgment because later events show that the injury was worse than supposed. Cf. ___ Restatement, supra, 73(2). ___________ _____ But a willingness to modify an award based on later changes in medical condition is not the same as giving a _______ party two chances to litigate the same historical fact (here, whether the June 1987 injury caused permanent damage). Such findings of historical fact are given collateral estoppel -12- -12- effect by compensation commissions, including the Maine commission. Van Houten, 655 A.2d at 334; Vodanovich, 27 ___________ __________ B.R.B.S. (MB) at 290-92.3 Even assuming that Acord preserved this final argument, it does not avail. Historical accident has given employees like Acord the benefit of two different compensation regimes. Apart from limitations on duplicative recovery, occasions exist when successive claims under federal and state law are entirely permissible; but successive claims are still subject to various conventional limitations, like collateral estoppel. Overall, collateral estoppel may as easily be helpful to claimants as to employers or insurers, and it reduces the litigation costs for everyone.  Acord's claim is also probably barred by the Longshore Act's one-year statute of limitations, 33 U.S.C. 913(a). The incident giving rise to the claim occurred in June 1987; the federal claim was filed in March 1992. The statute of limitations defense was properly raised and it obviously precluded Acord's claim unless the claim was rescued by the tolling provision contained in 33 U.S.C. 913(d), which reads as follows:  ____________________ 3In this very case the Maine commission's appellate division affirmed a commissioner's rejection of a separate, later claim by Acord for benefits deriving from the 1987 injury, explaining that "the petition [is] barred by the doctrine of res judicata because of a prior determination ____________ [i.e., in February 1989] that the effects of the injury ____ ended." -13- -13- Where recovery is denied to any person, in a suit brought at law or in admiralty to recover damages in respect of injury or death, on the ground that such person was an employee and that the defendant was an employer within the meaning of this chapter and that such employer had secured compensation to such employee under this chapter, the [one-year] limitation of time prescribed . . . shall begin to run only from the date of termination of such suit. The wording of this provision strongly suggests that it has nothing to do with Acord's situation. It may be doubtful that the Maine compensation proceeding is properly described as "a [damage] suit brought at law or in admiralty;" but, even assuming otherwise, "recovery" in that suit was certainly not denied "on the ground" that the claimant "was an employee and the defendant was an employer" covered by the federal statute. There is thus a compelling "plain language" argument against Acord's reliance on section 913(d). The evident purpose of section 913(d) reinforces its language. Worker compensation statutes were an innovation by which employers obtained statutory immunity to tort liability in exchange for liability without fault. Especially where there might be some doubt whether the Longshore Act covered the employee--often a close question--a precautionary tort suit might be filed; the tolling provision was plainly intended to protect the employee's compensation claim if statutory immunity defeated the precautionary suit. See ___ Ayers v. Parker, 15 F. Supp. 447, 451 (D. Md. 1936). Nothing _____ ______ like this happened in Acord's case. -14- -14- Congress could also have provided that the federal statute is tolled wherever a claimant begins state compensation proceedings addressed to the same injury, but it did not. It is not obvious that federal courts should enlarge an express tolling provision on policy grounds, nor are the policy grounds very compelling: once the ground rules are clear, it is easy enough for a claimant to file a precautionary federal claim within one year of the injury, even if the claimant prefers first to pursue a state remedy. This might seem to be the end of the matter except that the Fifth Circuit declared some years ago that section 913(d) does toll the Longshore Act limitations period in cases similar to Acord's. Ingalls Shipbuilding Div., Litton ____________________________________ Systems, Inc. v. Hollinhead, 571 F.2d 272 (5th Cir. 1978). _____________ __________ The court's reasoning relies heavily on the general principle of liberal interpretation of the Longshore Act, id. at 274, ___ which may seem a doubtful reason for ignoring express language. Ingalls is also at odds with several well-reasoned _______ district court cases,4 and has not been adopted by any other circuit. The Benefits Review Board apparently follows Ingalls in the Fifth Circuit, Calloway v. Zigler Shipyards, _______ ________ ________________ 16 B.R.B.S. (MB) 175, 177 (1984), but that is only to be expected.  ____________________ 4See Dawson v. Jahncke Drydock, Inc., 33 F. Supp. 668, ___ ______ ______________________ 669 (E.D. La. 1940); Ayers, 15 F. Supp. at 449-53; Romaniuk _____ ________ v. Locke, 3 F. Supp. 529, 530 (S.D.N.Y. 1932). _____ -15- -15- Nevertheless, Ingalls is the only circuit precedent on _______ the issue, and there might be a concern about fairness to claimants if we departed from Ingalls without warning. _______ Accordingly, we have thought it wiser to rest our decision here on collateral estoppel but to note as dictum our substantial doubts about Ingalls. These doubts will not _______ foreclose a future panel from deciding the Ingalls issue _______ afresh, but their expression now should give ample notice to future claimants to protect their federal claims by filing within one year. Reversed. _________ -16- -16-